**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Respondent,

    v.

REMY HEATH,

    Petitioner.

Civil Action No. 13-1846
Criminal Action No. 9-598-7

## MEMORANDUM OPINION

Pending before the Court is Petitioner's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Motion to Vacate"). The Court has carefully reviewed the record in connection with this Motion. For the following reasons, the Court **DENIES** Petitioner's Motion to Vacate.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On November 18, 2010, Petitioner was charged with conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d). On November 9, 2011, Petitioner entered into a plea agreement (Agreement). Doc. No. 7. In the Factual and Advisory Guidelines Stipulation section of the Agreement, the Parties stipulate that, under the facts of the case, the base offense level for a violation of § 1962(d) is 19. *See* Doc. No. 385 at 4; *see also* USSG § 2E1.1(a). The Agreement also stipulates that there would be a 3-level increase in the offense level because Petitioner was a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive. *See* Doc. No. 385 at 4; *see also* USSG § 3B1.1(b). Additionally, the Agreement provides that the Government would not oppose a three-level

1

reduction to the adjusted offense level of 22 based on Petitioner's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct and timely notification of his intention to plead guilty. *See* Doc. No. 385 at 4; *see also* USSG § 3E1.1. However, the Parties stipulated that there was no agreement as to Petitioner's criminal history category and that, if he was a career offender, his adjusted offense level would be 37 and his final offense level 34. *See* Doc. No. 385 at 4; *see also* USSG § 4B1.1(b).

The Agreement contained an attachment, Attachment A, setting forth stipulated facts. Doc. No. 385-1. Pertinently, Attachment A states that Petitioner was a member of the Latin Kings gang, which was organized into various "tribes," including "MOG." *See id.* at 1–2. The Attachment further stipulates that Petitioner "held a leadership position in the gang, serving as the Second Crown or Cacique for the MOG tribe." *Id.* at 3.

On or around September 8, 2011, the Court sentenced Petitioner to one count of conspiracy to participate in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). *See* Doc. No. 601 at 1. Departing downwardly from the Guidelines' advisory sentencing range, the Court sentenced Petitioner to 130 months' imprisonment.

## II. ARGUMENT

### A. Ineffective Assistance of Trial and Appellate Counsel

Petitioner argues that his counsel, Harry D. McKnett, represented him ineffectively because McKnett failed to object to Petitioner's 3-level offense level increase under USSG § 3B1.1. Under § 3B1.1, a defendant's offense is increased by three levels "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive . . . ." USSG § 3B1.1. Petitioner argues that, based on remarks this Court made during his sentencing, McKnett had no reason to believe that Petitioner was as a "manager

or supervisor" within the meaning of USSG § 3B1.1. To buttress this assertion, Petitioner cherry-picks the transcript of his sentencing hearing, during which, in relevant part, the Court stated:

- Mr. Heath . . . is one of the unique persons[] in that he's a career offender and at the same time didn't have a "predicate act" in terms of his involvement. . . . I did hear you when you said that the total amount of the drugs does indicate that he was a small[-]time street dealer. I recognize that. Doc. No. 719-6
- This was a very serious offense when you look at RICO violations and people coming together in mass and in combination to inflict harm on the community. . . . You probably . . . just got yourself caught up in this and you went along for it. Doc. No. 719-7.

The Court reviews Petitioner's claims of ineffective assistance of counsel under the familiar two-prong standard enunciated in *Strickland v. Washington*. To establish a claim of ineffective assistance of counsel, Petitioner must show that McKnett's performance was deficient and that it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, Petitioner must show that McKnett's performance and representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *See id.* at 688. Second, Petitioner must demonstrate that McKnett's deficient performance prejudiced him. *Id.* at 687. To satisfy this standard, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* standard also contemplates courts' indulging a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 689.

When evaluating post-guilty plea claims of ineffective assistance, defendants are usually bound to statements made under oath during a plea colloquy. *Fields v. Att'y Gen. State of Md.*, 956 F.2d 1290, 1299 (4th Cir.1992). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 222 (2005).

In this case, Petitioner has not shown that McKnett's performed deficiently by not raising the issue whether Petitioner was a manager or supervisor. In Attachment A, Petitioner stipulated that he held a leadership position in the Latin Kings, serving as the Second Crown or Cacique for the MOG tribe. Furthermore, during his plea colloquy, the Court asked Petitioner if he was "guilty of the facts set forth in . . . Attachment A" and he replied "Yes, sir." Doc. No. 633 at 23. Petitioner has not shown extraordinary circumstances that would reasonably lead one to believe that his sworn statements are contrary to fact. Indeed, in the trial of one of Petitioner's coconspirators, which took place before Petitioner's sentencing, two Latin Kings members testified that Second Crown was a leadership position. *See* Doc. No. 559 at 37–39, 42; Doc. No. 560 at 23. Under these circumstances, McKnett did not deficiently fail to argue that, or investigate whether, Petitioner was a manager in the Latin Kings.

Nor has Petitioner shown that McKnett's appellate performance was deficient. Although Petitioner asserts that McKnett should have raised the § 3B1.1 issue on appeal, Petitioner waived his right to appeal this issue under the Agreement. *See* Doc. No. 385 at 5. Pertinently, the Agreement's "Waiver of Appeal" states that Petitioner waives "all right . . . to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of

4

the advisory guidelines range . . . ." *Id.* In examining the Court's Rule 11 hearing, the Fourth Circuit found that the Court had ensured that Petitioner "was aware of the limits his plea would place on his appellate rights." *United States v. Heath*, 474 F. App'x 254, 255 (4th Cir. 2012). Accordingly, McKnett's failure to raise the § 3B1.1 issue on appeal was not deficient.

Even had Petitioner shown that McKnett's performance was deficient, he still has not shown that this deficiency prejudiced him. The Agreement states that, after factoring in reductions, Petitioner's offense level would be 34 and his criminal history Category VI if he is a career offender. *See* Doc. No. 385 at 4. Likewise, the Court stated during the Rule 11 hearing that, after reductions, Petitioner would receive an offense level of 34 if he was a career offender. Doc. No. 633 at 16. Petitioner "does not [appear to] dispute the fact that he is a Career Offender," Doc. No. 719 at 20, and his own evidence indicates that he was a career offender. *See* Doc. No. 719-6, -7; *see also* Doc. No. 594 at 2. Therefore, McKnett's alleged failure to argue that § 3B1.1's 3-level increase did not apply because Petitioner was not a manager or supervisor is immaterial. That is, even had Petitioner not received § 3B1.1's 3-level upward adjustment to his base offense level of 19, he still would have received a base offense level of 37 as a career offender. *See* USSG § 4B1.1(a), (b)(1).[1] Therefore, Petitioner's contention that, after the 3-level total reduction discussed earlier, he would have received a final offense level of 16 is without

---

[1] USSG § 4B1.1 provides that career offenders receive a base offense level of 37 where the statutory maximum for the offense is life. Petitioner was convicted of conspiracy to participate in a racketeering enterprise pursuant to 18 U.S.C. § 1962(d). The statutory maximum sentence for violations of § 1962(d) is "life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *United States v. Herrera*, 466 F. App'x 409, 422 (5th Cir. 2012) (citing 18 U.S.C. § 1963(a)). "Racketeering activity" includes murder and "[m]urder is punishable by up to life imprisonment." *See United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012) (citing 18 U.S.C. § 1961(1)(A)) (defining racketeering activity); *United States v. Shryock*, 342 F.3d 948, 990 (9th Cir. 2003) (citing 18 U.S.C. § 1111(b)). It is a matter of record that at least two of Petitioner's coconspirators were sentenced for numerous violent offenses, including murder. *See* Doc. No. 485; Doc. No. 518; Doc. No. 670-1; Doc. No. 720 at 2. Accordingly, although Petitioner makes no such argument, there is no indication that something other than life is the offense statutory maximum under § 4B1.1.

merit. Accordingly, Petitioner's claim of ineffective assistance of trial and appellate counsel fails.

**B.     Motion for Overrepresentation Departure Pursuant to USSG § 4A1.3**

In pertinent part, § 4A1.3 provides as follows: "If reliable information indicates that the defendant's criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." USSG § 4A1.3(b)(1). However, § 4A1.3 limits downward departures for career offenders to "one criminal category." *See* USSG § 4A1.3(b)(3)(A). Consistent with § 4A1.3(b)(3)(A), Petitioner seeks a "one-category reduction." Doc. No. 719 at 19. Generally, a career offender's criminal history category for crimes of violence is "Category VI." *See* USSG § 4B1.1(b). Petitioner's sentence was calculated at Category VI.

The Court denies Petitioner's request for a one-category overrepresentation departure. Petitioner has not shown that Category VI overrepresents the seriousness of his criminal history. Even though Petitioner did not commit the predicate RICO acts, he still was convicted of conspiracy to participate in a racketeering enterprise that included, but was not limited to, murder. Furthermore, as Petitioner concedes, he had committed two prior felony drug trafficking offenses when he was sentenced. Additionally, the Government asserts, and Petitioner does not appear to contest, that he had another prior conviction for marijuana possession and committed the instant RICO offense while he was on probation and parole. Therefore, even if Petitioner was only a "small-time street dealer" whose prior convictions involved no more than 20 grams of cocaine, the facts are more than adequate to support a criminal history category of VI. Furthermore, assuming that Category VI overrepresented the seriousness of Petitioner's criminal

history, Petitioner's downward departure is limited to Category V. Yet, for an offense level of 34 at Category V, the Guidelines advise a sentencing range of 235 to 293 months. In this case, after granting a significant downward departure from offense level 34 at Category VI, the Court sentenced Petitioner to 130 months in prison. As this sentence is substantially lower than 235 to 293 months, declining to reduce Petitioner's criminal category history to Category V has not prejudiced him. Accordingly, the Court denies Petitioner's request for an overrepresentation departure pursuant to USSG § 4A1.3.

C.     **Request for a Hearing**

Petitioner has requested an evidentiary hearing in conjunction with his Motion to Vacate. The decision whether to hold an evidentiary hearing in connection with a § 2255 motion to vacate is "generally left to the sound discretion of the district judge . . . ." *United States v. Wright*, No. 12–7468, 2013 WL 4258360, at *1 (4th Cir. Aug. 12, 2013); *see also Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006). "An evidentiary hearing in open court is required when a movant presents a colorable . . . claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue." *United States v. Pender*, 514 F. App'x 359, 360 (4th Cir. 2013) (citing *United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000)).

In this case, Petitioner has shown no material disputed facts outside of the record. Nor is a credibility determination necessary to resolve his Motion to Vacate. Accordingly, the Court denies Petitioner's request for a hearing.

III.     **CONCLUSION**

The Court has gone to great lengths to liberally construe Petitioner's Motion to Vacate. Understandably, the Government has vociferously opposed any consideration of the merits of

7

any of Petitioner's claims. The Court likewise believes that Petitioner's claims lack merit and that their denial is nonprejudicial. At the end of the day, the law is what it is and the Court is bound by it.

## IV. CERTIFICATE OF APPEALABILITY

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). To meet this burden, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented are adequate to deserve encouragement to proceed further." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citations and internal quotation marks omitted). Petitioner has raised no arguments that cause this Court to view the issues as debatable, find that the issues could have been resolved differently, or conclude that the issues raise questions that warrant further review. Accordingly, the Court denies a Certificate of Appealability.

| December 26, 2013 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |